O'BRIEN *v.* NEW YORK & LAKE CHAMPLAIN TRANSP. CO.

*(District Court, S. D. New York.* May 18, 1887.)

TUG AND TOW—LAKE CHAMPLAIN—LONG TOWS—NEGLIGENCE.

    A tug upon Lake Champlain, in taking tows of great length,—nearly 2,000 feet,—is bound, at her own peril, to take precautions, by dividing the tow or getting other help, as may be necessary, to prevent the tow's swinging far out of line, in winds not extraordinary, to the damage of the tow by running over buoys that mark the channel.

In Admiralty.
*Hyland & Zabriskie,* for libelant.

*Goodrich, Deady & Goodrich*, for claimants.

BROWN, J.   The libelant's canal-boat Estella, on the port side of the seventh tier, while being towed up Lake Champlain, received some damage in passing over Valchor's reef, a few miles north of Port Jackson. From the evidence it is probable that the water over the reef was a little deeper than the draught of the canal-boat, but only a few inches deeper. The reef was marked by a buoy about a foot in diameter, and I have little doubt that the injury was caused by the tow's passing over the buoy, which was carried beneath the boats, where there was not sufficient water to prevent grinding the buoy between the bottom and the boat, and that this racked the deck beams and stanchions of the boat, as testified to, without breaking through the bottom.

For the injury thus occasioned the transportation company must be held responsible.

The libelant was plainly without fault.   The injury was not a peril of the seas; because it could have been avoided, it seems to me, by reasonable prudence and precaution.   The tow, before it reached this part of Lake Champlain, consisted of 14 tiers of boats, two in each tier, upon a hawser of about 550 feet, making, altogether, a length of some 1,900 feet behind the tug.   A high wind from the west came on, which swung the tail of the tow some 600 feet out of line.   The channel abreast of the reef was some 700 feet wide, besides some additional width of available water.   There was nothing extraordinary in the wind that came on, although it was strong.   Such winds were well-known perils.   There were various ways in which the manifest danger of sweeping along with a tow of such vast length, thus swung out of line, might have been avoided.   I cannot see how tows of such perilous length can be justified.   They should be divided.   The liability of so long tows to sweep over the reefs and buoys is plain.   If such tows may be allowed when the weather is safe, the tug is at least bound to provide against the contingency of any change of weather that may happen upon the trip, by taking such help as may be available.   After this high wind came on, the tow might have been safely left at Port Jackson, as the wind then was; but, if that were not desirable, a helper could have been taken on to keep the tail of the tow in place.   The recent practice, also, of taking boats in line as they happen to come, without regard to their differences of draught, instead of adjusting them so as to preserve their places best in a long tow, is a practice difficult to support, though adopted to prevent disputes.   It seems plain to me that the prudent regard for the safety of the boats in the tow, which the law requires of all tugs, was not observed in this case, and that the respondents must be held answerable.   *Brower* v. *New York & Lake Champlain Transp. Co.*, Mar. Reg. April 7, 1886.

There are various circumstances, however, that cast considerable doubt upon the extent of the damage.   Having regard to these circumstances, I allow the sum of $250 only, with costs.